IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:                                                                  Case No. DL 07-02629
                                                                        Chapter 7

RYAN FORD LOWE,

          Debtor.
_____/

KELLY M. HAGAN, Trustee,

          Plaintiff

v.                                                                      Adv. Pro. No. 07-80641

LEROY LOWE,

          Defendant.
_____/

## MEMORANDUM OF DECISION REGARDING APPROVAL OF TRUSTEE'S SETTLEMENT

PRESENT:     HONORABLE SCOTT W. DALES
             United States Bankruptcy Judge

Kelly M. Hagan (the "Trustee") sought approval of a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure, and the request drew objections from creditors First State Bank of Middlebury and John Owens (collectively the "Creditors"). I held a hearing on October 3, 2008, in Lansing, Michigan to consider whether to approve, over the Creditors' objections, the Trustee's agreement to accept $20,000 for settling a preference avoidance and recovery lawsuit against Leroy Lowe (the "Defendant").

The lawsuit alleges that the Debtor, within one year of the petition date, transferred his vendee's interest in a land contract to his father, the Defendant, in exchange for a cash payment of $15,000 and forgiveness of $45,000 in antecedent debt. The Debtor was purchasing the real estate commonly known as 310 Beaver Street, Lansing, Michigan (the "Property").

At the hearing, the Trustee's counsel explained the reasons for settling with the Defendant. Those reasons include the following: (1) the risk of not prevailing in litigation,

including risks related to Defendant's setoff rights if any; (2) the costs of litigation; (3) the costs of completing the improvements on the Property; (4) the costs of paying-off the land contract at issue; and (5) the risk of premises liability if litigation is successful.

The Creditors claim they lack sufficient information to determine whether the settlement is in the estate's best interests. Nevertheless, from counsel's statements at the hearing, it appears the parties agree that the property in its present unfinished state is worth approximately $200,000, and that the estate, if it succeeded to the Defendant's rights under the land contract, would be obligated to pay the land contract vendor approximately $100,000 under the contract.

Trustee's counsel reported that continued prosecution of the lawsuit would cost at least $10,000 in attorney's fees, and I think this is a reasonable estimate. Indeed, if the Trustee is required to prove the Defendant's insolvency, this estimate might be on the low side considering the possible need for expert witnesses. In addition, it is reasonable to assume that realtor commissions in liquidating the property would be about 10%, reducing the net benefit by another $10,000. Thus, it appears that the net benefit from successful prosecution of the lawsuit would not exceed $80,000.

I must determine whether the estimated possibility of obtaining $80,000 later is equivalent to the certainty of having $20,000 now. To do so, I must consider the risks and carrying costs of the Trustee and the estate if the litigation is successful.

First, the Trustee reports that the Defendant appears to have given $15,000 in cash in exchange for the transfer. Under 11 U.S.C. § 547(c)(1), this payment in partial exchange for the transfer would probably defeat the avoidance *to the extent* of $15,000.

Second, because the transfer occurred outside the 90 day period, the Trustee cannot rely on the presumption of insolvency and must prove it. If she fails to do so, there will be no avoidance. The Trustee also argued that, to the extent the court elected to award a money judgment rather than recovery of the Property, the judgment might be reduced under 11 U.S.C. § 550(e)(1) if the Defendant proves he is a good faith transferee who improved the Property after the transfer. I would note, too, that the Trustee would have a difficult time winning a money judgment if avoiding the transfer of the land contract and recovering possession of the Property restored the estate to the *status quo ante*. See Suhar v. Burns (In re Burns), 322 F.3d 421, 427 (6th Cir. 2003) (avoidance and recovery are separate concepts under the Code); Frank v. McLain (In re Peet Packing Co.), 233 B.R. 387, 397 n.9 (Bankr. E.D. Mich. 1999) (suggesting that the court has discretion under Section 550(a) not to award value of property).

Third, the Trustee contends, reasonably and without contradiction, that avoidance of the transfer would impose upon the estate the risks and expenses of holding or possessing real estate, including insurance, taxes, maintenance, and tort risks. The Trustee did not quantify these risks, but I find that they are typical risks incident to holding property.

Finally, the Trustee is properly concerned about delay. Recovering value from the property, after litigation including possible appeals, is less attractive than simply depositing a check for $20,000 in immediately available funds. This seems consistent with the Trustee's

2

statutory duty to "reduce to money" the property of the estate "as expeditiously as is compatible with the best interest of parties in interest." See 11 U.S.C. § 704(a)(1).

Mindful of the court's task in approving settlements, see In re Anderson, 377 B.R. 865, 870-71 (6th Cir. BAP 2007), giving due deference to the Trustee's expertise in these matters, and after considering each of the factors set forth above, I will approve the settlement as "fair and equitable" by entering a separate order to that effect.

Dated:  October 14, 2008
Grand Rapids, Michigan

Scott W. Dales, U.S. Bankruptcy Judge

3